ROBERT L. WILKINS *vs.* HUTCHINSON BEVIER.

April 30, 1890.

**Possession by Tenant—Notice to Judgment Creditor of Lessor's Rights.** —Where real property upon which a judgment creditor asserts a lien is actually occupied by a third party at the time the judgment is docketed, the creditor is charged with constructive notice of the occupant's rights and interests; and, if the occupant is in possession under a lease, the creditor is also charged with constructive notice of the rights and interests of the person from whom the occupant leases.

**Same—Notice of Unrecorded Deed of Lessor.**—But the judgment creditor cannot be charged with notice that the lessor—the judgment debtor, in whose name the title to the property appeared of record at the time of the docketing of the judgment—has sold and conveyed the property to another person, although the latter has informed the tenant of his purchase, and that he has a deed from the debtor.

Appeal by plaintiff from a judgment of the district court for St. Louis county, where the action was tried by *Ensign*, J.

*McGindley & Cotton,* for appellant.

*White & Reynolds,* for respondent.

COLLINS, J.   Action to remove a cloud from the title which plaintiff claims to have to a lot in the city of Duluth. About the 1st of August, 1886, one Austin was the owner in fee of the lot in question. He then entered into a verbal contract with the plaintiff to sell and convey the lot to him for a certain sum, part of which was to be paid in professional services, the balance in cash. These services were rendered, and on October 23d of the same year said Austin made and executed a warranty deed of the premises, in which plaintiff was named as grantee; but he refused to deliver said deed to the plaintiff until the latter paid to him the balance of the purchase-money. This was done, the last payment being on March 27, 1888, at which time the deed was duly delivered to plaintiff. The latter had been acting as agent and attorney for Austin, who died November 7, 1888, for some two years prior to his decease. The lot in question, during all of the period of time covered by these transactions, was vacant and unoccupied, except a small portion in the rear, on which had been erected a brick building owned and occupied by one Buchanan, who had leased the ground from year to year from Austin. In November, 1887, his lease being about to expire, the tenant applied to plaintiff, as Austin's agent, for a renewal; and thereupon there was executed by Austin a lease of the ground actually covered by the building, for one year, commencing November 15, 1887. This lease was witnessed by plaintiff, and Austin's acknowledgment thereto was taken before him as a notary public. At the same time Buchanan paid to plaintiff, for Austin as he supposed, the rent in full for one year; that is, up to November 15, 1888. This lease was not recorded, and the plaintiff failed and neglected to put his deed on record until the 28th day of June, 1888. Long before this, suits had been brought against Austin in the district court of the county in which the lot is situated, and in which all of these parties then resided, for the recovery of money, in one of which this defendant was plaintiff. This plaintiff appeared in that action as Austin's attorney, and on March 31, 1888, verified his client's answer therein. Judgment was entered and docketed against Austin, defendant in said action, on May 24,

1888, more than one month before plaintiff's deed was recorded. The court below found that there was no good or sufficient reason for plaintiff's failure and neglect to put his deed on record until after the judgment was docketed; that, at the time of the docketing, this defendant, judgment creditor, had no knowledge of plaintiff's claim to the lot; that he then knew the record title to be in the judgment debtor, Austin, and also knew that upon the rear end of the premises there was the building before mentioned. And also found that "in the spring or summer of 1888 this plaintiff informed the tenant, Buchanan, that he had purchased the lot, and had a deed therefor, and that between the 15th and 25th days of June, same year, the creditor inquired of Buchanan, and by him was informed that the building was his own, but that he leased the ground upon which it stood from Austin."

The defendant's claim is based solely upon his purchase at a sale on execution issued for the purpose of enforcing the payment of the judgment heretofore described. Therefore both parties assert a title derived from Austin,—the plaintiff through his deed of conveyance, the defendant by means of proceedings upon his judgment. The principal question in the case is whether the latter had such notice of the plaintiff's rights and interests at the time of the docketing of his judgment as would render it subject and secondary to the unrecorded conveyance. If he was possessed of this notice, the defendant's purchase and the sheriff's certificate of sale, as evidence of a paramount title, cannot be allowed to prevail as against the plaintiff's deed. He was not a purchaser in good faith and without notice. *Lamberton* v. *Merchants' Nat. Bank,* 24 Minn. 281, 287. It will be observed that constructive notice only can be urged or is claimed by the appellant; and this arises, if at all, by reason of the actual, visible occupation by Buchanan of a portion of the premises at the time of the docketing of the judgment. The doctrine is well established in this state that a purchaser, by means of the tenant's possession, is put upon inquiry respecting the particulars of his claim and interest, and also from whom he holds; that the actual possession by a tenant not only protects him in all of his rights and interests, but that a pur-

chaser is affected with like notice of title in the occupant's landlord. *Morrison* v. *March,* 4 Minn. 325, (422;) *Groff* v. *Ramsey,* 19 Minn. 24, (44.) This is the doctrine found in the greater number of American cases. 2 Pom. Eq. Jur. § 618. A more restricted rule, which prevails in England, has been adopted in some of our states. *Beatie* v. *Butler,* 21 Mo. 313; *Flagg* v. *Mann,* 2 Sum. 486, 557; *King* v. *Paulk,* 85 Ala. 186; *Veazie* v. *Parker,* 23 Me. 170. The case last mentioned was cited with approval in *Roberts* v. *Grace,* 16 Minn. 115, (126,) upon the proposition that even an attornment to the grantee, of a tenant holding under the grantor, would not supply the want of registry, because there was no visible change of possession to indicate that there had been a change of title. The point, however, to which the remark was applicable, was not involved in the determination of the *Roberts Case.*

This brings us to a consideration of the relations which existed between appellant and Buchanan, when respondent's judgment was docketed, and what facts the latter might have learned, had he then pursued such inquiries as to Buchanan's claims as the law required. His investigations must be made at the time of the docketing of the judgment; and he will be held, in the absence of inquiries, as having knowledge of what he could have then learned. Therefore, it is quite immaterial, in this case, that Bevier, the judgment creditor, was permitted to testify that a few days subsequent to the entry of the judgment he inquired of Buchanan, the tenant, and was informed by him that he leased from Austin; and equally as immaterial that the trial court passed upon this in its findings of fact. The admission of the testimony, and the finding thereon, did not prejudice the appellant, because the rights of the respondent must be determined by what he knew, or might have learned upon proper inquiry, at the time his judgment was docketed. The lien of the judgment could not be impaired or aided by subsequently acquired knowledge as to the tenant's interest or his landlord's title. From the findings it appears that "in the spring or early summer of 1888" the appellant notified Buchanan of his purchase from Austin, and that he had a deed of the premises. This is indefinite, and no

effort was made in the court below to have the finding made more exact as to the time. But this is of no practical consequence; for we shall assume, while considering the question, that this information was imparted, as appellant claims, shortly after March 27th, when he received his deed, and antecedent to the 24th of May, the day of the docketing of the judgment. For several years, Buchanan, the tenant, had held from year to year under a lease from Austin, the judgment debtor; and for some time, at least, Wilkins, the appellant, had been the landlord's agent in respect to the leased property. This was well known to the tenant when he, in November, 1887, applied to the agent for a renewal of his lease; and he then paid one year's rent in advance to Wilkins, for Austin, as he supposed. A lease for the year ending November 15, 1888, was then signed by Austin, witnessed by the appellant, who also, as a notary, took and certified to Austin's acknowledgment thereof. It was under this lease, with the rent fully paid in advance for the term, that Buchanan held when the judgment was docketed. The tenant was notified by the appellant that he had succeeded by deed to Austin's title; but there is nothing in the record to show that at any time prior to the expiration of the term covered by the lease, or in any manner, Buchanan recognized or acknowledged appellant as his landlord. He did not expressly attorn, nor did he pay rent to appellant as the owner, and thus attorn by implication. At no time was the tenant in a position where he could not have been permitted, had occasion arisen, to deny, and to have put appellant upon proof of, his alleged title, although, by virtue of the conveyance, appellant secured Austin's title to the property as well as his rights in the written lease, including such as might arise by reason of the tenant's covenants, if any there were. This, of itself, did not constitute him the landlord.

Now, with this condition of affairs, was Buchanan's possession notice to the judgment creditor of the title now asserted by the appellant? Admitting it to have been the creditor's duty to have followed up the suggestion which the occupancy of the premises by a third party implied, to have investigated Buchanan's claims, and that he must be presumed to know all the facts which inquiry would have

developed, all that he might have learned had he interrogated Buchanan, what knowledge would he have acquired, in the natural course of events, and what must he be charged with as in his reach, had he attempted to obtain it? Certainly, he would have been told that Buchanan owned the building, and had leased the ground on which it stood for the year ending November 15th, following. The tenant's interest would have been defined by this answer, but the pursuit of information as to the actual title could not safely stop at this point. It would be incumbent upon the creditor to ascertain from whom he leased. To a verbal inquiry Buchanan's answer would have been, naturally and truthfully, that he leased from Austin; or, had the creditor called for the written lease, he would have learned precisely the same thing. It would seem plain that the law cannot require further or other inquiries, or hold the creditor as having knowledge, and therefore constructive notice, of facts which these inquiries might possibly, but not naturally, lead to,—such, for instance, as a disclosure that the lessor, the judgment debtor, in whose name the title to the property appears of record, has very recently sold to another person. It would also seem plain that no more should be required of the creditor than that he inspect the lease, or by verbal inquiry obtain information as to who may have executed it, and therefore assumed to have interests in the demised premises; failing so to do, that he be charged with the knowledge which he would have thus obtained. It is possible that, in the course of the conversation with Buchanan in respect to his rights in the premises, he would have informed the respondent of the sale and conveyance to appellant, but the conclusion is inevitable that such would not have been the natural or ordinary result of pertinent inquiries upon the subject, and, obviously, an inspection of the lease under which the tenant occupied would not have conveyed the slightest intimation of appellant's claim.

Of the seventh assignment of error we need but to say that, if the judgment herein involved was not against the person in whose name the title to the lot appeared of record prior to the recording of appellant's deed, the latter cannot be allowed to maintain the action. *Coles* v. *Berryhill,* 37 Minn. 56, (33 N. W. Rep. 213.) It was only

upon the assumption that the title of record was in Austin at the time of the docketing that the suit was brought, tried, or determined.

Judgment affirmed.

NOTE. By stipulation between the parties the decision in case of *Robert L. Wilkins* v. *Henry H. Bell,* argued with the foregoing case, by the same counsel, followed that in the foregoing case.