LEO S. LAMM v. MOSES K. ARMSTRONG and Others.[1]

July 14, 1905.

Nos. 14,372—(150).

**Collateral Security.**

The assignment by the vendor of an executory contract for the sale of real property as security for the payment of an indebtedness due the assignee vests in the assignee a lien upon the vendor's interest in the property to the extent of the debt secured, not exceeding the purchase money unpaid on the contract.

**Bankruptcy—Preference.**

The question whether the assignment involved in this case was an unlawful preference under the bankruptcy act was not an issue under the pleadings.

**Amendment of Pleading.**

The court did not err in refusing the application of defendants, after trial and decision of the case, to amend their answer by setting up the claim that the assignment was preferential.

Action in the district court for Watonwan county by plaintiff as executor of the will of Stephen Lamm, deceased, to enforce a lien upon certain land under a contract of sale thereof assigned to decedent by defendant Moses K. Armstrong, the vendor, as security for a debt. Defendants, J. W. Seager, Thomas Torson and Hans Olson, trustees in bankruptcy of defendant Armstrong, alone answered. The question of unlawful preference under the bankruptcy act was not raised by the pleadings. The case was tried before Lorin Cray, J., who found in favor of plaintiff. Thereafter defendant trustees applied for leave to serve an amended answer setting up an unlawful preference, which application was denied. From a judgment entered pursuant to the findings, defendant trustees appealed. Affirmed.

*J. L. Lobben,* for appellants.
*A. E. Clark,* for respondent.

[1] Reported in 104 N. W. 304.

BROWN, J.

This action was brought to enforce rights acquired through an assignment by the vendor of an executory contract for the sale of certain real property; to have the assignment, to the extent of the unpaid purchase price at the time it was made, declared a lien upon the vendor's interest in the property, and to foreclose the same. Plaintiff had judgment below, and defendants appealed.

The facts are as follows: On June 14, 1898, Moses K. Armstrong owned an undivided two-thirds of certain land located in Watonwan county, and on that day entered into an executory contract in the usual form to sell and convey the same to one Stemper for a consideration of $7,700. Armstrong's wife did not join in the contract. On October 7, 1898, Armstrong, being indebted to one Stephen Lamm, plaintiff's testate, assigned this contract to him as security for its payment. The assignment was indorsed on the back of the contract in the following language:

> For value received I hereby assign, sell and set over unto S. Lamm, all my right, title and interest in and to the land described in the within contract.

This was signed by Armstrong and his wife. At the time the contract was so assigned there was due thereon from the vendee the sum of $7,600. Thereafter, and without the knowledge or consent of Lamm, the contract was terminated by mutual agreement between Armstrong and Stemper, and the latter abandoned the property. The original contract was during all this time in the possession of Lamm, but was never recorded in the office of the register of deeds, or other notice given that it had been assigned to him. On November 24, 1903, Armstrong was adjudged a bankrupt, and defendants Seager, Torson and Olson were appointed his trustees, and were made defendants in this action in their capacity as such. The indebtedness due from Armstrong to Lamm has never been paid or discharged, and exceeded, according to the findings of the trial court, the amount due from Stemper on the contract. The trial court held on these facts that the assignment, in effect, vested in Lamm a lien upon the land to the extent of the indebtedness due on the contract, with interest, and judgment was ordered declaring plaintiff, as executor of the estate of Lamm,

entitled to enforce payment of the same as in the case of a foreclosure of a mortgage or other lien upon real property.

But one question is presented for consideration. The question of preference under the bankruptcy act, urged by defendants, trustees of Armstrong, was not made an issue by the pleadings, and therefore not involved in the case. The point that the court below erred in denying defendants' application to amend their answer by setting up that the assignment of the contract was such a preference, and hence void, is not well taken. This defense was not made by the original answer, and the application to amend was not made until after the trial of the action and a formal decision therein had been filed. It was clearly discretionary with the trial court whether to permit the amendment at so late a date.

The principal question in the case is with respect to the rights created by the assignment of the land contract from Armstrong to Lamm. It is contended on the part of plaintiff that in law and equity the transaction was, in effect, a mortgage; and that the land became thereby pledged as security for the payment of the debt intended to be secured. While it is contended on the part of defendants, trustees of the estate of Armstrong, that at most Lamm became substituted to the rights of Armstrong with authority to enforce the contract for the sale of the land to the same extent that Armstrong might have done, had no assignment been made, with no other or greater rights. The question is controlled by well-settled equitable principles. The intention of the parties must prevail, and they are presumed to have intended the natural and legal consequences of their acts. The assignment was made as security for the payment of money due from Armstrong to Lamm, and to provide him means for enforcing payment in case of the default of Armstrong to pay the same. To be effective for that purpose, something more than a mere substitution to the position of Armstrong was necessary. If that was the only effect of such a transaction, the assignment would be of doubtful force. The remedy of the assignee in such case on failure of performance by the vendee would be the cancellation of the contract, resulting in a restoration of the title to the vendor unincumbered by the contract or its assignment, and a complete extinguishment of the security. The contract in the case at bar was in fact canceled by agreement between Armstrong and Stemper without the

knowledge or consent of Lamm, and, unless by the transaction Lamm acquired a lien of some kind upon the land, the assignment was thereby rendered inoperative and valueless for the purpose intended.

It is elementary, in cases of executory contracts of this nature, that the vendor continues in a strict legal sense the owner of the land until the purchase price is paid; the vendee holding only the equitable title, the legal title remaining in the vendor as security. Minneapolis & St. L. Ry. Co. v. Wilson, 25 Minn. 382; Berryhill v. Potter, 42 Minn. 279, 44 N. W. 251. With the legal title in the vendor, he would have the clear right to mortgage the property, either by an assignment of the contract of sale or directly by execution of a formal instrument for that purpose. Either of which would, of course, be subject to all the rights of the vendee. It is certain that the parties to this transaction had in mind adequate security for the payment of the indebtedness to Lamm, and the result of their action must be held to effectuate their intent, to have created the relation of mortgagor and mortgagee between them. 11 Am. & Eng. Enc. (2d Ed.) 129, and cases cited. The assignment was, in effect, a transfer to the assignee of the assignor's lien for the purchase price of the land. The fact that Armstrong subsequently canceled the contract by an agreement with the vendee does not affect the rights of Lamm.

The precise question came before the Supreme Court of Texas in Russell v. Kirkbride, 62 Tex. 455, where it is said: "A vendor, however, may defeat his right to annul such a contract, to the prejudice of another, to whom he has transferred notes given to secure the purchase money, for they carry with them the lien which the vendor had, and he could not be permitted, without wrong to such holder, to destroy the security which may constitute the sole or chief value of the note or notes transferred; and if, as between the vendor and vendee, such a contract be rescinded without the consent of the holder of notes which have been transferred, then it certainly would be true that the lien would still continue as against the vendor for the protection of the holder of such notes, and it would also continue against the land in the hands of a subsequent vendee, who should buy it with notice of the lien on the land existing while the land was in the hands of his vendor or of the first vendee."

By the cancellation Armstrong deprived Lamm of a remedy against the vendee, but he could not thus deprive him of his remedy against the land.    Young v. Atkins, 51 Tenn. 529 ; Cummings v. Oglesby, 50 Miss. 153 ; Church v. Smith, 39 Wis. 492 ; Lowry v. Peterson, 75 Ala. 109.    The rule of the cases cited fully supports the decision of the trial court, and is in harmony with the general rules of equity applicable to transactions of this and like nature.

We have examined the record with reference to the contention of defendants that the amount awarded to plaintiff was in excess of the amount actually due, and conclude that the findings of the court in this respect are fully sustained.    It appears that Armstrong was indebted to Lamm at the time of the assignment in the sum of $6,000, and the testimony is that the assignment was intended as security for that amount and such other amounts as Lamm might thereafter advance to Armstrong.    A mortgage for future advances is valid.

Judgment affirmed.